### WHITMAN et al. v. WEBSTER et al.

### In re MINNEAPOLIS, ST. P. & S. S. M. RY. CO.

### No. 12016.

Circuit Court of Appeals, Eighth Circuit.

Oct. 16, 1941.

James E. Dorsey, of Minneapolis, Minn., and George W. Morgan, of St. Paul, Minn. (Donald West, of Minneapolis, Minn., on the brief for appellant E. A. Whitman, as receiver of Wisconsin Cent. R. Co.; M'-Cready Sykes, of New York City, on the brief for appellants United States Trust Co. and Williamson Pell, as Trustees), for appellants.

James L. Hetland, of Minneapolis, Minn. (Fordyce W. Crouch, of Minneapolis, Minn., on the brief), for appellees G. W. Webster and Joseph Chapman, as Trustees of property of Minneapolis, St. P. & S. S. M. R. Co.

John S. Pillsbury, Jr., of Minneapolis, Minn. (A. M. Lewis and Hovey C. Clark, both of New York City, J. B. Faegre and Robert J. Christianson, both of Minneapolis, Minn., Larkin, Rathbone & Perry, of New York City and Faegre, Benson & Krause, of Minneapolis, Minn., on the brief), for appellee Central Hanover Bank & Trust Co., as Trustee.

Before GARDNER, WOODROUGH and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

This is an appeal from an order denying two items of a claim filed by the receiver of the Wisconsin Central Railway Company, herein called the Wisconsin Central, against the Minneapolis, St. Paul & Sault Ste. Marie Railway Company, herein called the Soo, now in reorganization under § 77 of the Bankruptcy Act, 11 U. S.C.A. § 205.

The receivership of the Wisconsin Central commenced December 2, 1932; and the reorganization proceeding for the Soo was commenced December 31, 1937.

On April 1, 1909, the Wisconsin Central as lessor entered into a written lease with the Soo as lessee, by the terms of which the lessor demised to the lessee for a term of 99 years all its lines of railway and other property, including after acquired property. The claim in dispute is based upon an alleged breach by the Soo of the provisions of said lease. It is conceded that the lease terminated on December 2, 1932, on the beginning of the receivership, and it is alleged that the breach occurred on that date.

The first item of the claim is an assertion of ownership by the Wisconsin Central of an undivided interest to the extent of $542,976.36 in value of the stock of materials and supplies purchased by the Soo and held in its name for the alleged use of the Soo and of the Wisconsin Central during the period the lease was in effect. It is alleged that the Wisconsin Central turned over to the Soo at the commencement of the term of the lease materials and supplies of the value of $542,976.36, and that the Soo agreed on termination of the lease to return to the Wisconsin Central the same materials and supplies or materials and supplies of an equal value. It is further alleged that the materials and supplies originally turned over to the Soo have since been consumed and are now represented by an undivided interest in the changing stock of the Soo.

The second item of the claim is for a further undivided interest in the Soo's changing stock of materials and supplies to the extent in value of $500,000 for an advancement in that amount made by the Wisconsin Central to the Soo in 1917 with the alleged understanding that it should be a special deposit used solely to apply on the stock of materials and supplies carried by the Soo for the use of the Wisconsin Central during the remainder of the term of the lease, and with the further alleged understanding that upon the termination of the lease materials and supplies of the

value of $500,000 should be turned over to the Wisconsin Central by the Soo.

The trustees in the reorganization proceeding of the Soo deny that the receiver for the Wisconsin Central has any title, legal or equitable, in the Soo's stock of materials and supplies; that the materials and supplies received from the Wisconsin Central by the Soo were used and fully accounted for in accordance with the terms of the lease; and that the $500,000 advanced to the Soo by the Wisconsin Central in 1917 created only a debt and was not a purchase of any interest in the Soo's stock of supplies nor an obligation to turn over materials to the Wisconsin Central at the termination of the lease. The trustees further allege (1) that the claim is barred by laches and the six-year statute of limitations, and (2) that mortgages made by the Soo in 1888 and 1899 are liens on its materials and supplies superior to the claim of appellant, if valid.

The Central Hanover Bank and Trust Company, as successor trustee under the first two mortgages on the Soo property, filed an answer claiming that the liens of its mortgages on the Soo's materials and supplies are superior to the claims of the receiver.

The trial court filed an able and exhaustive opinion, made findings of fact and conclusions of law, and entered an order denying both items of the claim, in all of which it is contended that the court erred.

As to each item of the claim the important question for determination is what were the rights and obligations of the parties to the lease on the date of its termination in reference to the materials and supplies purchased and paid for by the Soo during the period of operation under the lease. The answer to this question depends upon the terms of the lease and the conduct of the parties while it was in force and effect.

We shall first note the pertinent provisions of the lease and then discuss the evidentiary facts in connection with the contentions of the parties with reference to the two items of the claim.

The recitations in the preamble to the lease declare that it is deemed to be for the best interest of the parties that the two systems of railway owned by them should be operated together, while retaining their separate corporate existence.

To that end in Article One of the lease the Wisconsin Central demised all its railway lines and all its property to the Soo and conferred upon the Soo full and complete authority to control, operate and manage the two systems as one during the term of the lease.

Article Three provided that the Soo should have "the sole control of all funds and other assets of the Lessor, whether current or accumulated, and also of all earnings * * * and other properties * * * to be used, however, wisely and prudently according to its best judgment" for the purposes set forth in the lease, "provided, however, that the Lessee shall not in any event, commingle said earnings, funds or assets with its own, and that it shall keep and maintain with respect thereto, a separate and complete system of accounting * * *."

Article Five provided that: "Subject only to the covenant to maintain a separate accounting * * * the Lessee shall have the right to manage, operate and administer all of the railways and other properties covered by this lease * * * as a part of the railway owned and operated by the Lessee * * * Provided * * * that all expense of such management and administration shall be paid out of the earnings of the properties hereby demised." It was provided that upon the termination of the lease all the demised properties and additions and improvements made thereto should revert to the Lessor; and the Soo covenanted in Article Twenty-Four that at that time it would "deliver and surrender to the Lessor the said demised railroads and property free from floating indebtedness incurred for maintenance or operating expenses, taxes and fixed charges and in at least as good condition as when delivered to the Lessee * * * reasonable and usual depreciation as to any of said property subject to depreciation alone excepted, and will fully account to the Lessor for all earnings, surplus, and other assets received by the Lessee under the provisions hereof."

Article Twenty-Five provided that the lease should "not be construed as requiring the Lessee to become financially responsible" for the expenses of maintenance, operation or improvement of the leased system, "but that all such expenses may be paid by the Lessee out of the earnings of the railways and other properties of the Lessor."

Article Twenty-Six provided that the auditors of the parties should make "a complete inventory of all the properties of whatever nature hereby demised, and all of the moneys and current assets of the Lessor to be turned over to the Lessee under the provisions hereof which said inventory shall be * * * considered a part of the lease."

1. *The Claim for $542,976.36 in Value of Materials and Supplies.*—The first item of appellant's claim is an assertion of ownership to an undivided interest to the extent of $542,976.36 in value in the stock of materials and supplies purchased and paid for by the Soo. The claim is denied. The facts out of which it arises are not in dispute. When the Wisconsin Central system was turned over to the Soo pursuant to the lease of April 1, 1909, among the assets delivered to the Soo were materials and supplies of the value of $542,976.36. Such materials and supplies consisted of fuel, locomotive parts, lumber for repairing cars, ties, rails, bolts, tools, waste, oil, spikes, nuts—thousands of items necessary for repairs and for keeping the system in running order which were kept in stores and warehouses and scattered along the entire system. The Soo also at that time had materials and supplies for use on its system kept in stores and warehouses along its lines. At all times during the term of the lease the materials and supplies of the Soo aggregated more than the amount of the claims of appellant.

After the lease was executed there were set up on the books of both parties accounts showing the current assets and current liabilities transferred from the Wisconsin Central to the Soo as of April 1, 1909, as follows:

| | |
|---|---|
| Cash | $1,106,657.45 |
| Materials and supplies | 542,976.36 |
| Other current assets | 715,523.54 |
| Total | $2,365,157.35 |
| Current liabilities | 968,425.01 |
| Balance | $1,396,732.34 |

The statement further shows that during 1909, 1910 and 1911 the Soo paid to the Wisconsin Central cash advancements, in addition to its earnings, aggregating the full amount of the excess of the transferred current assets over the transferred liabilities. Thereafter the Soo carried but one materials and supplies account and purchased and paid for all supplies used in the operation of the combined railway system; and the Wisconsin Central was charged with material when it was actually used or applied on its property.

Notwithstanding the way the material and supplies accounts were handled the appellants contend that the Wisconsin Central is not bound by the bookkeeping system employed; that the Wisconsin Central after the merger of these accounts into one continued to own an undivided interest in the material and supplies kept on hand by the Soo for the use of both systems. While appellants point to no express language in the lease to sustain this contention, they claim that the materials and supplies transferred by the Wisconsin Central to the Soo under the lease constituted a part of the demised property which the Soo covenanted to return to the Wisconsin Central upon the termination of the lease; that these materials and supplies were included within the meaning of the words "all the property" of the Lessor in the granting clause and in the word "properties" in Article Twenty-Three of the lease.

We do not think this construction is borne out by the provisions of the lease as a whole. The lease separates the properties transferred by the Wisconsin Central to the Soo into two classes, one consisting of the "demised" properties which were to be returned to the lessor upon the termination of the lease and the other consisting of moneys and current assets which were to be accounted for. These two classes appear in Article Twenty-Six which provides "that immediately upon the execution of this agreement, the auditors of the parties hereto shall make * * * a complete inventory [1] of all the properties of whatever nature hereby demised, and [2] all of the moneys and current assets of the Lessor to be turned over to the Lessee under the provisions hereof." Unfortunately the inventory thus provided for is not in the record.

Article Twenty-Four provides "that at the end of said term or sooner termination of this lease, the Lessee [1] will deliver and surrender to the Lessor the said demised railroads and property * * * with all such additions, betterments and improvements as shall have been made thereto * * * and [2] will fully account to the Lessor for all earnings, sur-

plus, and other assets received by the Lessee under the provisions hereof."

It seems clear that materials and supplies carried by a railroad for daily use in making repairs and which are constantly changing are included under "current assets" as that term is used in Article Twenty-Six and under "other assets" in Article Twenty-Four. Expenses of a railroad occasioned by repairs have been held to be a "current expense". Poland v. Lamoille Val. R. Co., 52 Vt. 144, 163. A special accountant testified that such property is a current asset. Such construction is manifestly consistent with the use of the term in Article Three of the lease, which provides that: "The Lessee shall be entitled * * * to the sole control of all the funds and other assets of the Lessor, whether current or accumulated, * * * to be used * * * wisely and prudently * * * for the sole purpose of operating, maintaining and improving the railways. * * *"

Further, the record shows that the method of handling the materials and supplies accounts was "wise and prudent" on the part of the Soo and for the best interest of the Wisconsin Central. Had the Soo maintained an account for materials and supplies for the separate use of the Wisconsin Central and then charged all replacements to the earnings of the Wisconsin Central, the value of the supplies could not in many instances have been kept up to the total of $542,000. The earnings in several years were not adequate for that purpose and for the payment of interest on the Wisconsin Central's bonded indebtedness and of taxes.

Again, the Wisconsin Central was not prejudiced by the construction placed upon the lease as shown by the material and supplies account. It is agreed that the parties contemplated that the material and supplies on hand in 1909 would be used and consumed in the operation of the railways pursuant to the lease. There is no requirement that the amount of supplies to be carried for the Wisconsin Central's use should always be kept up to the value of those turned over to the Soo. Had the Soo used up the supplies on hand when there were no surplus earnings available for the purchase of replacements and then purchased additional supplies only as needed, the result would be the same as it is under the method adopted; and there would not have been $542,000 in value of materials and supplies or any amount available to deliver and surrender back to the Wisconsin Central in 1932 when the lease was terminated.

■■ A further contention is that the lease must be construed as claimed by appellants because at the time the lease was executed the Wisconsin Central was controlled and dominated by the Soo and because the lease by transferring control over the properties of the Wisconsin Central to the Soo created a fiduciary relation between the parties. The facts of dominance and of a fiduciary relation are disputed by appellees; but assuming that appellants' position is supported by the record, the rule invoked does not support appellants' contention and the facts do not support the result which they claim. The rule is that when dominance of a corporation by a director or officer exists so as to create a fiduciary relation and such dominance is used unfairly, fraudulently or for the purpose of overreaching and cheating the stockholders of the corporation, the burden is upon the dominant party to show fairness and honesty in his management and conduct of the corporate affairs. First Trust & Savings Bank v. Iowa-Wisconsin Bridge Co., 8 Cir., 98 F.2d 416, 425; Geddes v. Anaconda Mining Co., 254 U.S. 590, 599, 41 S.Ct. 209, 65 L.Ed. 425. In this instance there is no evidence of unfairness, or of fraud, or of cheating, or of overreaching. The court found that the Soo had performed the terms of the lease in good faith and had fully accounted for its management of the properties. The finding is not clearly erroneous (Rule 52, Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c), but, we think, is overwhelmingly supported by the facts in evidence. Neither can it be said that the provisions of the lease itself are unfair. The misfortune giving rise to the Wisconsin Central's receivership and financial difficulties is not as shown by the record, the result of unfairness in the lease nor of wrongful management by the Soo. The misfortunes of both parties are the result of adverse business conditions prevailing in the territory covered by the railway system during a part of the period of the life of the lease, and over which the parties had no control. The earnings of the Wisconsin Central disappointed the hopes of both parties. Had

the earnings come up to expectations there could have been no criticism of the management.

2. *The October 1917 Transaction.*—In October, 1917, the Soo's cash was lower than usual in relation to its obligations while the Wisconsin Central had a relatively large cash balance. In that month the Wisconsin Central advanced to the Soo from its earnings $500,000 in amounts of $250,000 each. The question raised by the transaction is whether the $500,000 was taken by the Soo as a loan or as the purchase price of an undivided interest to the extent of $500,000 in value in the constantly changing stock of materials and supplies carried by the Soo. The appellants claim that the money was taken in payment of an interest in the materials and supplies whether then, previously, or subsequently acquired. The appellees contend that it was a loan.

It is apparent that the character of the transaction as to whether it was a sale and purchase or a loan depends upon the intent of the parties. Unfortunately no one now has any independent recollection of the transaction. No witness was produced by either party to testify to the circumstances attending the transaction. The records alone are available; and the absence of complete records is in part relied upon.

A search of the records of both parties failed to disclose an explanatory memorandum in either. There was no bill of sale or other declaration of interest to support the contention that there was a sale to the Wisconsin Central, no release of the first mortgage on the Soo's property, no showing that the Wisconsin Central had acquired title to any of the Soo's materials and supplies. The transaction is not mentioned in the minutes of either board of directors, and none of the materials and supplies was segregated for the separate use of the Wisconsin Central. On the other hand, there was no promissory note or other form of express agreement to pay the advancement.

The only references to the transaction were found in the vouchers, ledger and journal entries and reports of the parties. The first one of these memoranda appears on the vouchers of the Wisconsin Central. The vouchers were the authority of the officers to make the disbursement. The first one was dated October 13, 1917,

and the second October 29, 1917. They were for $250,000 each. On the face of each appears: "To Minneapolis, St. Paul & Sault Ste. Marie Ry. Co. Dr. For amount advanced to apply on materials & supplies carried for Wisconsin Central Ry. Co." On the reverse side is the direction to the bookkeeper: "Charge to M. St. P. & S. S. M. Ry. Co. Special Account Materials & Supplies."

The Soo audit vouchers bearing the same dates as the Wisconsin Central vouchers read: "To Scandinavian-American National Bank, Dr., For amount advanced for Special Deposit." This deposit was drawn out of the Special Account between December 31, 1917, and June 26, 1918, and deposited in the general cash accounts of the Soo.

At the time the money was advanced the Wisconsin Central entered the transaction in its ledger as "Amounts advanced to apply on Material and Supplies carried for W. C. Ry. Co.", and the Soo at the same time entered in its ledger: "716–Wisconsin Central Railway-Materials and Supplies. This amount paid by W. C. Ry. Co. to reimburse Soo Line for amount of Material and Supplies carried in stock at Shoreham Shops."

The Wisconsin Central carried this $500,000 item on its books from 1921 to 1924 as a "Non-negotiable debt to Affiliated Companies" and from 1924 to 1939 as "Investments in Affiliated Companies". The Soo carried the account on its books from 1920 to 1924 as a "Materials and Supplies" account and from 1924 to 1939 as a "Non-negotiable debt to Affiliated Companies". The item was reported by both companies to their stockholders and to the Interstate Commerce Commission in various ways. From 1924 to 1939 the Wisconsin Central reported it as "Investments in Affiliated Companies" and the Soo reported it during the same period either as a "Non-negotiable debt to Affiliated Companies", or as an "Investment in Affiliated Companies". However, in 1922, it was reported by the Soo as a credit to "Miscellaneous Accounts Receivable".

The balance sheet of the Soo in its report of December 31, 1917, shows a decrease of $500,000 in the materials and supplies owned by it and an increase of a like amount in its cash account, while the Wisconsin Central balance sheet for the same year showed an increase of $500,000

in materials and supplies and a corresponding decrease in cash. As to this situation the appellees introduced testimony to show that the Soo's accounting department was in turmoil in 1917 with poor supervision, and they claim that these entries were errors which were corrected in subsequent years.

The record also shows that during the term of the lease the Soo paid into a separate cash account for the Wisconsin Central the net of its gross revenues less its expense of operation. In various years the earnings of the Wisconsin Central were insufficient to make monthly settlements and the Wisconsin Central became indebted to the Soo. In 1925 a settlement was had and the deficits were paid, but no reference was made to this $500,000 transaction. Thereafter the earnings were inadequate to carry the Wisconsin Central, and from 1925 to 1932 the Soo advanced to the Wisconsin Central more than $7,000,000 which remains unpaid.

After finding the evidentiary facts in reference to the October, 1917, advancement by the Wisconsin Central to the Soo, the trial court found as a further fact that: "The parties did not intend to effect a sale of any materials and supplies or to confer on the Wisconsin Central any title to, interest in, or lien on the Debtor's [Soo's] stock of materials and supplies by reason of said advances, and the wording of said vouchers evidencing the advances was intended merely to indicate the reason for the advances."

As a conclusion of law the court also found that: "The payment of the Wisconsin Central to the Debtor of $500,000 in October, 1917, constituted merely advances to the Debtor and did not constitute a purchase of materials and supplies nor did it create any interest in or lien on the Debtor's stock of materials and supplies. The advances are merely an unsecured claim, subject to offset by the advances to the Wisconsin Central during the period of the lease. The Receiver of the Wisconsin Central has no title to * * * the stock of materials and supplies in the possession of the Trustees of the Debtor's property and no basis has been established for any priority for such unsecured claim."

The appellants assail the finding that the parties did not intend to effect a sale of materials and supplies by the October, 1917, advancements as not supported by the evidence. It is conceded that the evidence is in many respects ambiguous, but it is said that the Soo controlled and dominated the Wisconsin Central and owed a duty to deal fairly with the Wisconsin Central's funds, and that it would be unfair to deny the receiver's claim for title to an undivided interest in the stock of materials and supplies of the Soo.

We think the finding of the court is supported by substantial evidence, and that it is not clearly erroneous. There is clear evidence of the advancements but no direct evidence of a sale. Under the evidence the reason for the advancement may be conjectural, but the inference that a purchase and sale was intended is purely theoretical. There is a rational basis in the record for the finding of the court that the wording in the vouchers was intended to indicate the reason for the advances, but the claim that a sale or purchase was intended rests upon a theoretical inference and the assumption that any other result is unfair to the Wisconsin Central and wrongful on the part of the Soo. No wrongful act of the Soo in any of these dealings is pointed out to sustain the contention of appellants other than the contention that it is unfair for the Soo to refuse to transfer to the receiver the materials and supplies which he claims. A claim cannot be supported by a charge nor an unsupported assertion. The record fails to support the burden cast upon the receiver to support his claim by relevant evidence.

We find no merit in the contentions of appellants as to either item of the receiver's claim.

In view of the conclusion which we have reached upon the merits, it will not be necessary to discuss the contention of the appellees that the claim is barred by the statute of limitations and laches, nor the contention of the Hanover Bank and Trust Company that its mortgage is a lien upon the Soo's stock of materials and supplies superior to appellants' claim.

Affirmed.