975 F.2d 1370
 Jeff R. ARENT; Kathleen Corrigan Foley; Charles Haagenson;
Harley H. Hanson; Linnea Stockness Hanson; Harris Hanson
& Company; Gary L. Jacobson; Eugene L. Johnson; Wally L.
Johnson; Clifford Lof; William P. Marver; Phyllis F.
Meryhew; Donald W. Molde; Darlene J. Molde; Kenneth L.
Museus; Cheryl A. Naddy; Terry P. O'Brien; James Slavik;
Richard L. Stockness; Raymond O. Wenz; Plaintiffs-Appellants,
v.
DISTRIBUTION SCIENCES, INC., a Delaware corporation,
Defendant-Appellee.
 No. 91-2649.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 10, 1992.
Decided Sept. 24, 1992.
 
 Peter J. Timmons, Minneapolis, Minn., argued (Mark P. Kovalchuk, on the brief), for plaintiffs-appellants.
 Karl L. Cambronne, Minneapolis, Minn., argued (Sandra J. McGoldrick-Kendall, on the brief), for defendant-appellee.
 Before JOHN R. GIBSON, Circuit Judge, LAY, Senior Circuit Judge, and LOKEN, Circuit Judge.
 LOKEN, Circuit Judge.
 
 
 1
 Twenty minority shareholders of bankrupt LAN Systems, Inc. ("LAN"), commenced this diversity action against Distribution Sciences, Inc. ("DSI"), alleging numerous claims arising out of DSI's contractual relationship with LAN. The district court[1] dismissed the complaint on the ground that these claims belong to LAN and may not be asserted individually by its shareholders. Plaintiffs appeal. We affirm.
 
 
 2
 In reviewing de novo the dismissal of a complaint for failure to state a claim, "we must take the well-pleaded allegations of the complaint as true, and construe the complaint, and all reasonable inferences arising therefrom, most favorably to the pleader." Morton v. Becker, 793 F.2d 185, 187 (8th Cir.1986). Therefore, we must begin with the allegations contained in plaintiffs' complaint.
 
 
 3
 Plaintiffs allege that both LAN and DSI were in the business of developing and marketing computer software. In December 1988, LAN borrowed $100,000 from DSI pursuant to a Loan and Security Agreement. In April 1989, LAN and DSI entered into an Agreement and Plan of Merger. On September 7, 1989, DSI gave notice it was terminating the merger agreement, declared LAN in default on the note, and demanded repayment. On October 2, an involuntary Chapter 11 bankruptcy petition was filed against LAN which was converted to a Chapter 7 liquidation proceeding four days later. LAN then went out of business and transferred its assets to DSI as secured creditor.
 
 
 4
 Plaintiffs' allegations of misconduct are that DSI "had control of LAN and its business for some time prior to the [loan] default," "caused LAN to reject a merger and fail to pursue other financial assistance," and "engaged in a course of conduct that ... was designed to protect itself and obtain the assets of LAN." In addition, plaintiffs allege that, "[w]ell in advance of the failed merger [DSI] knew or should have known that the merger would fail"; DSI caused LAN not to disclose this to plaintiffs, which induced plaintiffs "to alter their investment decisions concerning [LAN] Stock." Based upon these allegations, plaintiffs assert causes of action for common law fraud, negligent misrepresentation, duress, interference, and breach of fiduciary duty, plus violations of the Minnesota Business Corporations Act and Uniform Commercial Code.
 
 
 5
 The Non-Disclosure Claims.
 
 
 6
 Plaintiffs allege that DSI's failure to disclose that its merger with LAN would fall through constituted fraudulent and negligent misrepresentation that caused plaintiffs to buy or hold LAN stock. These allegations fail to state an individual shareholder claim for three distinct reasons.
 
 
 7
 1. Minnesota adheres to the general principle that an individual shareholder may not assert a cause of action which belongs to the corporation. See Stock v. Heiner, 696 F.Supp. 1253, 1263 (D.Minn.1988). A well-recognized method for determining whether a claim belongs to the corporation, rather than its shareholders, is to inquire whether "[t]he injury to each stockholder is of the same character." Seitz v. Michel, 148 Minn. 80, 181 N.W. 102, 105 (1921). In International Broadcasting Corp. v. Turner, 734 F.Supp. 383, 392 (D.Minn.1990), for example, the court dismissed a breach of fiduciary duty claim against corporate directors because the management conduct at issue--granting the president of the company excessive compensation for his personal guarantee of corporate obligations--"[could not] be said to inflict an injury on the [claimants] separate and distinct from all shareholders." We agree with the district court that plaintiffs' misrepresentation claims cannot survive scrutiny under this standard.
 
 
 8
 Plaintiffs do not allege that they suffered injury different than that suffered by other LAN shareholders. Plaintiffs allege that DSI's non-disclosures deprived all LAN shareholders of negative information about the company, which affected their investment decisions. This is like the claim in Crocker v. FDIC, 826 F.2d 347, 351 (5th Cir.1987), cert. denied, 485 U.S. 905, 108 S.Ct. 1075, 99 L.Ed.2d 235 (1988), where minority shareholders alleged that if controlling shareholders had informed them of the company's poor financial situation, they would have disposed of their stock. The court held that this alleged "lost profit opportunity" was nothing more than a claim for diminution in the value of corporate stock, which may only be asserted derivatively. Therefore, the shareholders' individual claims were dismissed.
 
 
 9
 Similarly, in Cowin v. Bresler, 741 F.2d 410, 416 (D.C.Cir.1984), the shareholder plaintiffs alleged that management had issued "deceptive and incomplete reports" which deflated the market price of the company's stock and thereby harmed the shareholders. The court concluded that any harm was shared by the stockholders proportionately to their holdings; the fact that plaintiffs framed the harm as a direct fraud did not permit them to go forward on a claim that was, at its core, derivative.
 
 
 10
 We agree with plaintiffs that fraud may give rise to claims for direct shareholder recovery, but only when the fraud causes separate and distinct injury to the plaintiff shareholder(s). For example, in Grogan v. Garner, 806 F.2d 829 (8th Cir.1986), a corporate officer structured a takeover so that a group of favored shareholders would receive additional assets and then withheld this information in order to induce plaintiffs to sell their stock at the offered price. We upheld an individual recovery by the shareholder plaintiffs, noting that only some of the shareholders were injured and that this was a direct fraud on the plaintiffs. 806 F.2d at 834.[2] Here, on the other hand, DSI's failure to disclose that the merger would fail affected all LAN shareholders equally. Therefore, this is not an individual shareholder claim. As the Seventh Circuit said in Kagan v. Edison Bros. Stores, Inc., 907 F.2d 690, 692 (1990), "the nub of the problem is that the investors' injury flows not from what happened to them ... but from what happened to [the company]."
 
 
 11
 2. Under Minnesota law, failure to disclose a material fact is actionable misrepresentation only if the defendant has a duty to disclose material information to the plaintiff. See Richfield Bank & Trust Co. v. Sjogren, 309 Minn. 362, 244 N.W.2d 648, 650 (1976). Corporate officers, directors, and controlling shareholders may owe a duty to disclose corporate information to minority shareholders. See Murphy v. Country House, Inc., 307 Minn. 344, 240 N.W.2d 507, 511-12 (1976). DSI, however, owned no LAN stock and was not an officer or director of LAN. Thus, DSI held no relationship to LAN which would, by reason of corporate law, create or imply a duty to LAN's shareholders.
 
 
 12
 Plaintiffs rely upon their conclusory allegation that DSI had "control" of LAN, but they cite no case--and we have found none--in which a contractual creditor/debtor relationship, such as DSI had with LAN, was held to create a disclosure duty running from the creditor to the debtor's minority shareholders. Of course, here there was also an agreement to merge, but unrelated parties to a merger agreement normally deal at arms' length until the merger is consummated, unless a different relationship is defined in the agreement to merge, which is not alleged. Although we can imagine circumstances in which premerger relations might progress to the point that the acquiring company would assume some fiduciary duty to the prospective acquiree's shareholders, this would be an exceptional circumstance, one not encompassed nor sufficiently described by a bare allegation of "control." Compare Whitman v. Webster, 122 F.2d 860, 864 (8th Cir.1941) (99 year lease giving lessee total control over the leased corporate assets was essentially a joint venture that might create a fiduciary duty between the parties). Thus, plaintiffs have failed to allege a legal relationship between DSI and LAN or themselves that would give rise to a fiduciary duty under Minnesota law.
 
 
 13
 3. This claim also fails as a matter of law because any injury to plaintiffs was not caused by DSI's failure to disclose. Plaintiffs were not harmed because they were unable to realize the true value of their stock--they were harmed because the true value of their stock was zero. "Diminution in value of the corporate assets is insufficient direct harm to give the shareholder standing to sue in his own right". Flynn v. Merrick, 881 F.2d 446, 449 (7th Cir.1989).
 
 
 14
 Plaintiffs argue that they would have sold their LAN stock had they known that the merger would not occur. But if everyone had known this adverse fact, then the stock's value would have reflected the adversity. Only if plaintiffs were the only ones DSI told, so that they could have improperly traded on inside information in dealing with third party purchasers, would disclosure have aided their investment fortunes. Compare Crocker, 826 F.2d at 351-52.
 
 
 15
 The Seventh Circuit made this point succinctly in Kagan: "The difficulty with [plaintiffs'] position is that the deceit is not coupled with the injury." 907 F.2d at 692. The injury in this case was caused not by DSI's alleged non-disclosure, but by the demise of LAN. That is a derivative injury.
 
 
 16
 For each of the foregoing reasons, the district court properly dismissed plaintiffs' misrepresentation claims.
 
 
 17
 The Additional Claims.
 
 
 18
 In the remaining five counts of their complaint, plaintiffs allege that LAN executed the merger and foreclosure agreements under duress from DSI; that DSI interfered with LAN's business relations, causing LAN to protect DSI's creditor interests to LAN's disadvantage; and that DSI breached its duty of good faith and fair dealing by declaring its loan to LAN in default and demanding repayment.
 
 
 19
 These claims arise from the contractual relations between DSI and LAN. Whether a suit may be brought as an individual action or only as a derivative suit on behalf of the corporation turns on whether the plaintiff has suffered an injury distinct from that incurred by the corporation. Grogan v. Garner, 806 F.2d 829, 834 (8th Cir.1986). Plaintiffs were not parties to LAN's contracts with DSI, and do not allege that they were intended third party beneficiaries. Therefore, they may not enforce the contracts. See Anderson v. First Northtown Nat'l Bank, 361 N.W.2d 116, 118 (Minn.Ct.App.1985). Plaintiffs failed to plead a direct relationship between themselves and DSI, or injury distinct from that suffered by LAN.
 
 
 20
 In addition to avoiding a multiplicity of lawsuits, the rule preventing individual shareholders from asserting the corporation's claims is intended to protect creditors of the corporation. See, e.g., Poliquin v. Sapp, 72 Ill.App.3d 477, 28 Ill.Dec. 615, 618, 390 N.E.2d 974, 977 (Ill.App.1979). The present action illustrates that concern. Because LAN is bankrupt, permitting plaintiffs to sue individually for LAN's claims against DSI could directly disadvantage LAN's creditors. "Recovery by the corporation ensures that all of the participants--stockholders, trade creditors, employees, and others--recover according to their contractual and statutory priorities. Direct recovery outside of bankruptcy defeats those priorities." Kagan, 907 F.2d at 692.
 
 
 21
 Because plaintiffs did not allege injury separate and distinct from that incurred by LAN, nor allege a duty running directly from DSI to plaintiffs, the district court properly dismissed these remaining claims because they are exclusively corporate claims.
 
 
 22
 The judgment of the district court is affirmed.
 
 
 
 [1]
 The HONORABLE DONALD D. ALSOP, Chief United States District Judge for the District of Minnesota. Since ruling on this motion, Judge Alsop has taken Senior status
 
 
 [2]
 Individual recovery is warranted only if there is a direct injury to the shareholder. For example, in Empire Life Ins. Co. v. Valdak Corp., 468 F.2d 330, 335-36 (5th Cir.1972), defendant pledged stock to plaintiff to secure a loan. Plaintiff gained control of the corporation and the value of the stock subsequently fell. Defendant was allowed to counterclaim for the decline in the stock's value, not as a stockholder, but as a pledgor claiming breach of the pledgee's duty not to waste the value of the collateral. Likewise, in Hunter v. Old Ben Coal Co., 844 F.2d 428, 432-33 (7th Cir.1988), the shareholders were permitted to sue individually, not because they owned stock in the contracting corporation, but because they were intended third party beneficiaries of the contract at issue