**PACEMAKER PLASTICS CO., INC., et al., Plaintiffs,**

v.

**AFM CORPORATION, et al., Defendants.**

No. 5:01–CV–132.

United States District Court, N.D. Ohio, Eastern Division.

May 14, 2001.

---

## OPINION

GWIN, District Judge.

On March 26, 2001, the defendants[1] moved, under Fed.R.Civ.P. 12(b)(6), to dismiss the second amended complaint for failure to state a claim [Doc. 31]. Plaintiffs Pacemaker Plastics Co. Inc., Thermal Foams, Inc., and Therma Foam, Inc., oppose the motion. On April 17, 2001, the plaintiffs filed a motion to amend the judgment of the dismissal of the first amended complaint under Fed.R.Civ.P. 59(e) [Doc. 40]. For the reasons discussed below, the Court denies the plaintiff's motion to amend judgment and grants the defendant's motion to dismiss the second amended complaint.

## I. Background

This dispute arises from an abandoned corporate merger. Plaintiffs are shareholders in Defendant AFM. The plaintiffs generally say that other shareholders in AFM should not have considered merging AFM with another company. The merger never took place. The plaintiffs say several of their fellow shareholders took certain acts in supporting the merger that triggered AFM's right to redeem the stock of the other shareholders considering the merger. The plaintiffs seek to assert these redemption rights on AFM's behalf. The plaintiffs also say the defendant shareholders violated the individual participation agreements between the defendants and AFM. The plaintiffs also seek to assert breach of fiduciary duty and contract claims on AFM's behalf.

The defendants say that the plaintiffs fail to state a claim for which relief maybe granted. First, the defendants say the plaintiffs are not proper representatives to bring a derivative action. Second, defendants argue that the plaintiffs are not parties to the redemption agreement with other shareholders and AFM. The defendants also say that the Court lacks subject matter and personal jurisdiction. Finally, the defendants argue the Court should dismiss the second amended complaint because the plaintiffs filed it without permission.

AFM is a corporation organized to provide development, research and support services to its shareholders. Sixteen

---

**1.** The defendants are AFM Corporation ("AFM") shareholders, Advance Foam Plastics, Inc. ("AFP"), Big Sky Insulations, Inc. ("Big Sky"), Branch River Foam Plastics, Inc. ("Branch River"), Contour Products, Inc. ("Contour"), Pacific Allied Products, Ltd. ("Pacific Allied"), Insulated Building Systems, Inc. ("IBS"), Team Industries, Inc. ("Team"), Heartland EPS, Inc. ("Heartland"), and Michael Tobin ("Tobin"). On April 10, 2001, the tenth defendant, AFM, filed a reply joining the other defendants' motion to dismiss the second amended complaint [Doc. 39].

shareholders have equal ownership rights in AFM. Fifteen shareholders are corporations involved in the manufacture and sale of expanded polystyrene foam ("ESP") products and systems. The remaining shareholder is Michael Tobin, AFM's president.

AFM is structured to provide support services to its fifteen corporate shareholders. Those services, called the AFM Program, include joint product development and marketing. Each corporate shareholder entered an individual participation agreement with AFM that defined the participant's rights and obligations in the AFM Program. Under their participation agreement, each participant appoints one member to AFM's board of directors. Additionally, the agreements contain sections on confidentiality and covenants not to solicit employees. Finally, the participation agreements have forum-selection and arbitration clauses covering any disputes concerning the agreements.

AFM's bylaws allow the board of directors to appoint an executive committee that exercises complete authority in managing AFM. During the times relevant to this case, representatives from Advance Foam Plastics and Defendants IBS, Team, Big Sky, Contour, and Pacific Allied made up the executive committee. Defendant Tobin also participated in executive committee meetings.

One of the products developed by AFM, R–Control structural building panels, provided the impetus for the proposed merger underlying this action.

R–Control structural building panels are used in commercial and residential construction. AFM developed these panels, but its fifteen corporate shareholders generally manufacture and sell the panels. As shareholders, these fifteen companies receive the licensing rights to use AFM's technology and to sell AFM products.

The merger negotiations that give rise to Plaintiffs' claims under the stock redemption and participation agreements began after a newly-formed company expressed interest in obtaining AFM's interest in the R–Control structural building panels. This new company, R Merger Company, Inc., was formed by three shareholders, Timothy Feagan, Michael Terpak, and William Jaeger. Feagan is the president and a shareholder of Defendant Team while Terpak is the president and a shareholder of Defendant IBS. Team and IBS are both corporate shareholders of AFM. In fact, Feagan and Terpak served on AFM's executive committee as representatives of Defendants Team and IBS.

R Merger sought to acquire and more aggressively market the R–Control building panels. Prior to beginning negotiations about whether an acquisition of the R–Control system made sense, R Merger requested that each AFM shareholder agree to exclusively negotiate with R Merger for a specific time period. R Merger made this request through a proposed letter agreement dated November 30, 2000.

On December 18, 2000, the R Merger principals met with the AFM shareholders. At this meeting, R Merger's shareholders generally described the outline of their desired acquisition agreement. They suggested that R Merger acquire AFM and then exclusively license all of its technology back to AFM, save the R–Control structural building panels. After R Merger's presentation, a straw poll showed that 13 of AFM's 16 shareholders had a general interest in entering into negotiations with R Merger. Plaintiffs Therma Foam and Thermal Foams opposed any transaction. Plaintiff Pacemaker Plastics abstained.

On December 27, 2000, R Merger sent out proposed revisions to its earlier proposed letter agreement. This revised letter agreement proposal outlined the basic terms of the proposed acquisition and license-back. The letter agreement also included provisions calling for (1) confidentiality, (2) an exclusive negotiating period, and (3) a voting agreement executed by a majority of AFM's shareholders that confirmed their agreement "to vote in favor of the transaction" and providing "that the shareholders will cause AFM to eliminate any redemption rights that AFM may have with respect to AFM stock that may arise as a result of the transaction." The letter agreement states that only the confidentiality and exclusive negotiating period provisions were binding. The voting agreement provision stated that it was non-binding.

Nine AFM shareholders executed the letter agreements. But prior to any merger negotiations, R Merger rescinded its letter agreements on January 18, 2001. Each of the nine AFM shareholders agreed to the recision. As a result, there is no agreement for R Merger to acquire AFM. Nor are there any current negotiations for such an acquisition.

Plaintiffs nevertheless contend that the nine AFM shareholders triggered AFM's redemption rights by executing the letter agreements. These redemption rights are contained in stock redemption agreements previously executed between AFM and each of its shareholders.

The separate stock redemption agreements between AFM and its corporate shareholders are substantially similar. These agreements are designed to prevent unwanted ownership interests. Thus, the agreement allows a shareholder to sell its interest in AFM to any other shareholder. But AFM has the right to redeem stock to prevent its sale to a non-related entity:

No mortgagee, pledgee, Trustee in bankruptcy, or other person, individual or business entity, shall acquire any ownership or interest in Shareholder's Shares, and any attempt at any sale, transfer or other disposition of such Shares, voluntary or involuntary, shall constitute an irrevocable offer by Shareholder to sell the same to Company and Company shall thereupon redeem all Shares then owned by Shareholder.

Stock Redemption Agreement, Paragraph 4.

Michael Tobin's agreement differs. With regard to Tobin, AFM has a right of first refusal. His agreement provides that if he ever "desires to sell, encumber, transfer or otherwise dispose of any of his Shares," he must "first provide the Corporation and the other Shareholders with written notice [of the terms of the proposed sale] ... [and then] [f]or a period of sixty (60) days from the date of such Notice, the Corporation shall have the option to purchase all, but not less than all, of the Shares identified in such notice...."

According to Plaintiffs, the execution of the letter agreements with R Merger constituted an attempted sale of AFM stock. Thus, they say AFM is obligated to redeem the nine shareholders' AFM stock.

In addition, the plaintiffs allege that the defendants utilized confidential information in preparing the plan presented to AFM's board of directors. The plaintiffs also say the defendants used AFM's assets in furtherance of the plan at AFM's expense. Specifically, the plaintiffs allege a number of AFM board meetings were called to consider the merger plan at AFM's expense. The plaintiffs say Defendants IBS, Team, and Big Sky negotiated with Tobin, while he was AFM's president, to become an executive of their new corporation. Finally, the plaintiffs say the de-

fendants did not recuse themselves from a vote by which AFM assessed each shareholder $10,000 to defray the costs of defending the present lawsuit.

On January 17, 2001, the plaintiffs filed their first amended complaint in this action. The complaint asserted four claims revolving around the stock redemption agreements executed between AFM and each stockholder.[2] On February 8, 2001, the defendants, except AFM,[3] moved to dismiss the first amended complaint. On March 16, 2001, the plaintiffs filed their second amended complaint. Besides restating the four claims from the original complaint, the second amended complaint asserted five new counts seeking monetary and declaratory relief for alleged breach of fiduciary duty and breach of contract by the defendants under the participation agreements. At that time, the Court was still considering the defendants' motion to dismiss the plaintiffs' first amended complaint.

On April 3, 2001, the Court, filed an opinion and order dismissing the four claims from the plaintiffs first amended complaint [Docs. 35 and 36]. The Court dismissed the plaintiffs' derivative claim because the Court found the plaintiffs did not fairly and adequately represent similarly-situated shareholders. The Court dismissed the plaintiff's contract claims because the Court found the plaintiffs were not parties to the contracts and lacked standing to sue for breach of contract. Specifically, the Court held that the plaintiffs could not directly enforce the contracts between AFM and other share-

holders. The Court also held that the plaintiffs were not intended beneficiaries of the stock redemption agreements so could not enforce the contracts as third party beneficiaries. The Court's order dismissing the first amended complaint did not mention the second amended complaint.

In their second amended complaint the plaintiffs' assert a variety of claims under the stock purchase agreements and the participation agreements. Counts 1–4 present the same derivative, direct, and third-party beneficiary claims under the stock redemption agreements as in the first amended complaint.

In Count 5, the plaintiffs say the corporate shareholder defendants breached their fiduciary duty to AFM and the plaintiffs by misusing confidential information, usurping corporate opportunities belonging to AFM, pursuing personal interests that conflict with AFM's interests, and seeking to lockout the plaintiffs from the benefits of the AFM shareholder redemption agreement. In Count 6, the plaintiffs bring a shareholder derivative suit on behalf of AFM for alleged breaches of the participation agreements signed with AFM by the defendant shareholders. In Count 7, the plaintiffs bring a direct claim against the shareholder defendants for breach of the participation agreements signed with AFM. In Count 8, the plaintiffs bring a claim as third party beneficiaries against the shareholder defendants for breach of the participation agreements signed with AFM. In Count 9, the plaintiffs say they are entitled to injunctive and declaratory

---

**2.** The first amended complaint asserted (1) a shareholder derivative claim on behalf of AFM to enforce AFM's redemption rights, (2) a direct claim against defendants for breach of contract for failing to redeem their shares,and (3) a third-party beneficiary claim against defendants for breach of contract for

failing to redeem their shares. The plaintiffs also asserted a claim for declaratory relief that was related to their derivative and breach of contract claims.

**3.** On February 12, 2001, AFM joined the other defendants' motion to dismiss.

relief and specific performance of the participation agreements. The Court considers the defendants' motion below.

## II. Filing of the Second Amended Complaint

On March 16, 2001, the plaintiffs filed their second amended complaint. Once a defendant responds to the original complaint, a plaintiff can only file an amended complaint with the leave of the Court. Fed.R.Civ.P. 15(a). The plaintiffs did not file a motion for leave to file their second amended complaint because they were under the belief the Court had granted them leave to amend during a status conference on March 9, 2001. Only after the defendants challenged the validity of the second amended complaint did the plaintiffs request the Court's permission to file the second amended complaint.

Fed.R.Civ.P. 15(a) states that leave to amend "shall be freely given when justice so requires." Although the decision to permit amendment to a complaint after an answer has been filed is committed to the discretion of the trial court, *General Elec. Co. v. Sargent & Lundy,* 916 F.2d 1119, 1130 (6th Cir.1990), "[t]he thrust of Rule 15 is ... that cases should be tried on their merits rather than the technicalities of pleadings." *Tefft v. Seward,* 689 F.2d 637, 639 (6th Cir.1982). "Abuse of discretion occurs when a district court fails to state the basis for its denial or fails to consider the competing interests of the parties and likelihood of prejudice to the opponent." *Jet, Inc. v. Sewage Aeration Sys.,* 165 F.3d 419, 425 (6th Cir.1999) (quoting *Moore v. City of Paducah,* 790 F.2d 557, 559 (6th Cir.1986)).

However, a court has the discretion to decline to grant leave to amend a complaint when the amendment would be futile. *Thiokol Corp. v. Department of Treasury, State of Michigan, Revenue Div.,* 987 F.2d 376, 382–83 (6th Cir.1993); *Marx v.*

*Centran Corp.,* 747 F.2d 1536, 1550 (6th Cir.1984). A court may deny a motion to amend a complaint if the court concludes that the proposed pleading could not withstand a Rule 12(b)(6) motion to dismiss. *Thiokol Corp.,* 987 F.2d at 382–83; *Martin v. Associated Truck Lines, Inc.,* 801 F.2d 246, 248 (6th Cir.1986).

In this case, assuming the plaintiffs had properly requested leave to the complaint, the Court must still analyze the amended complaint to see if it could withstand a motion to dismiss. Therefore, the Court grants the plaintiffs' motion to file the second amended complaint. However, as discussed more thoroughly below, the Court holds the second amended complaint cannot survive the defendants' motion to dismiss for failure to state a claim.

## III. Defendants' Motion to Dismiss the Second Amended Complaint

### A. Claims Under the Shareholder Redemption Agreements

Counts 1–4 of the second amended complaint are identical to the first amended complaint. On April 3, 2001, the Court dismissed those counts for failure to state a claim. However, on April 15, 2001, the plaintiffs filed a motion to amend the judgment under Fed.R.Civ.P. 59(e). As the parties incorporated their earlier arguments on Counts 1–4 into the filings concerning the defendants' motion to dismiss the second amended complaint, the Court will consider both motions together.

The Court has discretion to grant motions to amend judgment under Rule 59(e). *Kenneth Henes Special Projects Procurement v. Continental Biomass Indus.,* 86 F.Supp.2d 721, 725–726 (E.D.Mich.2000). In order to amend judgment under Fed. R.Civ.P. 59(e), the plaintiff must demonstrate: 1) evidence not previously available has become available; 2) there has been an intervening change in controlling law; or

3) it is necessary to correct a clear error of law or prevent a manifest injustice. *Gen-Corp, Inc. v. American Int'l Underwriters,* 178 F.3d 804, 834 (6th Cir.1999).

The plaintiffs say the Court made a clear error of law in its April 3, 2001, order dismissing the first amended complaint. They argue that the Court included the defendant corporate shareholders as similarly situated shareholders when dismissing the derivative suit. Also, the plaintiffs say the shareholder redemption agreements contain language showing that AFM shareholders were intended third-party beneficiaries under the agreements.

After reviewing the plaintiffs' motion to amend judgment, the Court holds that it properly construed and applied federal and Minnesota law in dismissing the first amended complaint. No amendment to the Court's previous judgment under Fed. R.Civ.P. 59(e) is required. Therefore, the Court dismisses Counts 1–4 of the second amended complaint for the same reasons discussed in the Court's order dismissing the first amended complaint.

### B. Claims Under the Shareholder Participation Agreements

#### 1. Breach of Fiduciary Duty

The defendants first seek dismissal of the breach of fiduciary duty claim. They argue the plaintiffs have failed to state a claim for which relief can be stated under Fed.R.Civ.P. 12(b)(6).

Dismissal for failure to state a claim is appropriate only if it appears beyond doubt the plaintiffs can prove no set of facts that would entitle them to relief. *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *McLain v. Real Estate Bd. of New Orleans,* 444 U.S. 232, 246, 100 S.Ct. 502, 62 L.Ed.2d 441 (1980); *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). In deciding the defendants' Rule 12(b)(6) motion, the Court accepts all of the plaintiffs' factual allegations as true and construes the complaint in the light most favorable to the plaintiffs. *Sistrunk v. City of Strongsville,* 99 F.3d 194, 197 (6th Cir.1996); *Board of Trustees of Painesville Tp. v. City of Painesville,* 200 F.3d 396, 398 (6th Cir.1999).

In their breach of fiduciary duty claim, the plaintiffs say the defendants breached their duty to the plaintiffs and AFM by the following actions: (1) the alleged use of confidential information to develop a "plan" to change the ownership structure of AFM; (2) the alleged use of AFM's assets and employees in furtherance of the plan at AFM's expense; (3) the alleged "usurpation of corporate opportunities;" (4) the alleged solicitation of Tobin while he was president of AFM; (5) the alleged "negotiations" to license AFM technology to a Canadian company; and (6) the alleged assessment of $10,000 per shareholder to pay for AFM litigation costs.

In order to state a claim for breach of fiduciary duty under Minnesota law, a plaintiff must establish the four elements of "duty, breach of that duty, causation, and damages." *Conwed Corp. v. Employers Reinsurance Corp.,* 816 F.Supp. 1360, 1362, n. 3 (D.Minn.1993). Under Minnesota law, shareholders of a closely held corporation have a fiduciary duty to each other. *Advanced Communication Design, Inc. v. Follett,* 615 N.W.2d 285, 294 (Minn.2000) (citing *Fewell v. Tappan,* 223 Minn. 483, 27 N.W.2d 648, 654 (1947)). This duty includes dealing "openly, honestly and fairly with other shareholders." *Evans v. Blesi,* 345 N.W.2d 775, 779 (Minn.Ct.App.1984). Shareholders may breach their fiduciary duty by treating another shareholder unfairly, by unjustifiably interfering with that shareholder's relationship with the corporation, or by frustrating or defeating that sharehold-

er's reasonable expectations. *Pedro v. Pedro*, 489 N.W.2d 798, 802 (Minn.Ct.App. 1992).

The Court holds that the plaintiffs have not stated a claim for which relief can be given. Taking all their factual allegations as true the plaintiffs have not made out the necessary elements of a breach of fiduciary duty.

■ The plaintiffs' never sufficiently allege how they were damaged by the alleged use of confidential information by R Merger, the alleged use of AFM's employees and assets in furtherance of R Merger's plan, the alleged usurpation of corporate opportunities, or the alleged solicitation of Tobin to work for R Merger. The talks between R Merger and AFM did not change AFM's corporate structure or result in AFM giving a license for R Merger to sell the R–Control building panels. The plaintiffs' own licenses from AFM remain unchanged. The R Merger shareholders disclosed their association with AFM corporate shareholders IBS and Team. Additionally, while R Merger's plan to merge with AFM was discussed at meetings of the AFM shareholders, there are no allegations the defendants' improperly called board meetings or that the meetings differed from other meetings of AFM shareholders. In short, the plaintiff's are no worse off as the result of defendants' claimed misconduct.

Furthermore, plaintiffs do not have standing to directly enforce the participation agreements. AFM entered a separate participation agreement with each

corporate shareholder. Only AFM has the right to enforce its contractual rights. *Arent v. Distribution Scis., Inc.*, 975 F.2d 1370, 1374 (8th Cir.1992) (holding that, under Minnesota law, shareholders cannot enforce a corporation's contracts unless they are parties or intended third-party beneficiaries to such contracts).

Similarly, AFM's executive committee negotiating to license a product to a Canadien company does not automatically create a breach of a fiduciary duty. Under the participation agreement, the participants authorize AFM to license products to international companies. Nothing in the agreement gives an AFM Program participant exclusive geographic rights to an AFM product. While the plaintiffs may not like the decision to license the product to the Canadien company, the license does not constitute a breach of fiduciary duty.

■ Finally, the defendants' failure to recuse themselves from the vote that assessed each shareholder $10,000 for litigation defense does not constitute a breach of fiduciary duty.[4] AFM is a named defendant in the lawsuit brought by the plaintiffs. In fact, the plaintiffs have brought both derivative and direct claims against AFM for allegedly breaching the shareholder agreements. Therefore, AFM has interests separate from the individual corporation defendants.

The corporate resolution assessing each shareholder $10,000 makes it clear the funds are to defend AFM's interests, not those of the other defendants.[5] The par-

---

4. The $10,000 is payable in $1,000 monthly installments beginning with the March 2001 dues payment.

5. The assessment was referenced in the second amended complaint. Second Amended Complaint ¶ 66. In deciding a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a district court may consider documents attached to

the motion if referenced in the complaint and central to the plaintiff's claim. *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir.1999); *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir.1997). The corporate resolution assessing the $10,000 per shareholder was attached to the defendant's motion to dismiss and is central to the plaintiffs' breach of fiduciary duty claim.

ticipation agreements each shareholder executed with AFM calls for the shareholders to pay AFM's costs through dues and special assessments. The $10,000 assessment was a special assessment passed to cover the costs of AFM's involvement in the present lawsuit. While other corporation shareholders are defendants in the lawsuit, there is not an inherent conflict of interest in shareholders voting funds to protect the interests of the corporation they own.

The Court dismisses the plaintiffs' fiduciary duty claim.

### 2. Breach of Contract

■ Next, the defendants seek dismissal of the breach of contract claims associated with the participation agreements. They say that the plaintiffs have not stated a claim for which relief can be given.

In these breach of contract claims, the plaintiffs seek to enforce the participation agreements between AFM and the individual corporation shareholders. Specifically, the plaintiffs assert two bases for their right to enforce the participation agreements. In Count 7, the plaintiffs say they can enforce the agreements because the other participation agreements were consideration for the plaintiffs' decision to enter their own agreements. In Count 8, the plaintiffs say they are third-party beneficiaries to AFM's redemption agreements with the other shareholders, and can thus enforce the same.

Turning to the direct breach of contract claim, the plaintiffs cannot assert a claim for which relief can be granted because they do not have standing. They are not parties to the other participation agreements; the agreements run solely between AFM and the other shareholders. Furthermore, even if these agreements were consideration for the plaintiffs' decision to enter similar participation agreements, Plaintiffs lack standing to enforce the con-

tractual rights detailed in the participation agreement. That right belongs to AFM, not individual shareholders. *Arent v. Distribution Sciences, Inc.,* 975 F.2d 1370, 1374 (8th Cir.1992) (holding that, under Minnesota law, shareholders cannot enforce corporation's contracts unless they are parties or intended third-party beneficiaries to such contracts).

■ Likewise, the plaintiffs claim as third-party beneficiaries also fails to state a claim for which relief can be given.

Under Minnesota law, a party can enforce a contract as a third-party beneficiary only when that contract expresses "some intent by the parties to benefit the third party through contractual performance." *Chard Realty v. City of Shakopee,* 392 N.W.2d 716, 720–21 (Minn.Ct.App. 1986). If a contract does not refer to a particular party, that party is not an intended beneficiary. *Id.*

The participation agreements between AFM and the other shareholders do not refer to the plaintiffs. While the agreement does mention "participants" on several occasions, this clearly indicates that the AFM Program anticipates it will have multiple shareholders. The agreement lays out the responsibilities between AFM and an individual participant. The agreement does not suggest it is for benefit of the plaintiffs. Thus, Plaintiffs Pacemaker Plastics, Thermal Foams, and Therma Foam cannot enforce the agreements as third-party beneficiaries.

Accordingly, the Court dismisses the plaintiffs breach of contract claims in Counts 7 and 8 and the related injunctive relief, declaratory relief, and specific performance claims of Count 9.

### 3. Shareholder Derivative Suit

Finally, the defendants seek dismissal of the plaintiffs' shareholder derivative claim

related to the participation agreements. They say the plaintiffs have failed to state a claim upon which relief can be granted.

 A derivative action permits shareholders to bring a suit to enforce a corporate claim after those controlling the corporation fail to take appropriate action. A derivative action, compared to a direct action, is required when the shareholder has suffered a harm that is indistinct from the harm suffered by other shareholders or by the corporation itself. *Wenzel v. Mathies,* 542 N.W.2d 634, 640 (Minn.Ct. App.1996) (citing *Arent v. Distribution Scis., Inc.,* 975 F.2d 1370, 1374 (8th Cir. 1992)). In a properly pled derivative action, the corporation is thus the real party in interest.

 The plaintiffs claim the corporate defendants breached the participation agreement with AFM by misusing AFM's confidential information, soliciting Tobin to work for R Merger, and breaching a covenant not to compete. However, as discussed in the previous section, no harm has occurred to AFM. Business negotiations with R Merger ended with no change to AFM's corporate structure or additional licenses to sell the R–Control building panels. The plaintiffs' say the R Merger negotiations required AFM to redeem the defendants' AFM stock. The Court explained in its April 3, 2001, order dismissing the first amended complaint that the plaintiffs could not bring a derivative suit on that claim because they did not fairly and adequately represent the AFM shareholders. Likewise, the plaintiffs cannot assert AFM's alleged failure to redeem the defendants stock is a "harm" justifying a shareholder derivative claim for breach of contract for negotiations that did not lead to any change in the plaintiffs status within AFM.

The Court dismisses the shareholder derivative for breach of contract under the participation agreements.

## C. Forum Selection and Arbitration Clauses of the Participation Agreements

 Even if the plaintiffs stated claims for which relief could be given, dismissal of Counts 6–9 would be appropriate due to the forum selection and arbitration clauses in the participation agreements. The participation agreement includes the following relevant sections:

14. Specific Performance—Notwithstanding Section 15 below, in the event of the breach or threatened breach by Participant of the terms and provisions of Sections 3.2, 8, 10, and/or 12.1 above, AFM shall have the right, if it so elects, to institute and prosecute proceedings in any court of competent jurisdiction in Hennepin County, Minnesota to enforce Participant's specific performance of such Section(s) or to enjoin Participant from breaching the terms and provisions of such Section(s), in addition to any other relief then available to AFM at law or in equity. Nothing herein contained shall be construed to prevent any other remedy in the event of any breach of this Agreement by Participant, as AFM may elect to pursue . . .

15. Arbitration—The parties agree to negotiate in good faith to resolve any dispute or an alleged breach of this Agreement or the Exhibits attached hereto incorporated by reference and made a part hereof. Furthermore, except as provided in Section 14 above, the parties agree that any such dispute or breach that the parties are unable to resolve through negotiation shall be submitted to arbitration in Hennepin County, Minnesota, within thirty (30) days from the date such dispute or breach arises . . . .

Shareholder Participation Agreement at 8–9. Sections 8 and 10 of the participation agreement refer to confidentiality and a covenant not to solicit employees, respectively.

A written agreement to submit disputes to arbitration is enforceable. *Andersons, Inc. v. Horton Farms, Inc.*, 166 F.3d 308, 322 (6th Cir.1998); *see also* 9 U.S.C. §§ 115 (codifying Federal Arbitration Act); Minn.Stat. § 572.08 (providing written agreement to arbitrate valid, enforceable, and irrevocable except upon grounds existing at law or in equity for revocation of any contract). Whether a party has agreed to arbitrate a particular dispute is a matter of contract interpretation for a court. *Ottman v. Fadden*, 575 N.W.2d 593, 595 (Minn.Ct.App.1998) (citing *Johnson v. Piper Jaffray, Inc.*, 530 N.W.2d 790, 795 (Minn.1995) (agreement to arbitrate matter of contract interpretation)). A court resolves any doubts in favor of arbitration. *Id.* at 595–96 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).

The Court dismissed the plaintiffs' direct and third-party beneficiary breach of contract claims because they were not parties to the defendants' participation agreements with AFM. However, assuming the plaintiffs were parties to the agreements, Section 15 clearly instructs all parties to arbitrate disputes under the agreement in Hennepin County, Minnesota. By the plain meaning of the participation agreement, the Court would be obligated to dismiss the direct and third-party beneficiary breach of contract claims because the plaintiffs should have submitted them to arbitration in Minnesota.

Similarly, as much as the shareholder derivative claim and breach of fiduciary claim deal with violations of Section 8 and 10 of the participation agreement, the forum selection clause requires that those claims be dismissed.

Parties may contract to submit to the jurisdiction of any court. *National Equip. Rental, Ltd. v. Szukhent*, 375 U.S. 311, 315–16, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964). Courts generally enforce forum selection clauses unless they are "so unreasonable that its enforcement would be clearly erroneous and against both logic and the facts on record." *Interfund Corp. v. O'Byrne*, 462 N.W.2d 86, 88 (Minn.Ct. App.1990) (quoting *Personalized Mktg. Serv., Inc. v. Stotler & Co.*, 447 N.W.2d 447, 451 (Minn.Ct.App.1989)); *see also Security Watch, Inc. v. Sentinel Systems, Inc.*, 176 F.3d 369, 374 (6th Cir.1999) (stating "forum selection clauses generally are enforced by modern courts unless enforcement is shown to be unfair or unreasonable"). A forum selection clause is unfair or unreasonable only if (1) the chosen forum is a seriously inconvenient place for trial; (2) the choice of forum agreement is one of adhesion; [or] (3) the agreement is otherwise unreasonable. *Hauenstein & Bermeister, Inc. v. Met–Fab Indus., Inc.*, 320 N.W.2d 886, 890 (Minn.1982).

Section 14 explicitly says only AFM may bring an action for a breach of Sections 8 or 10. Therefore, as much as the plaintiffs' direct action for breach of fiduciary claim is based on violations of Section 8 and 10, the clear language of the participation agreement prohibits the claim.

With respect to the shareholder derivative suit, the plaintiffs' claim is premised upon violations of Section 8 and 10. They say that Section 14 gives AFM the option, but does not require it, to file suit in Hennepin County, Minnesota. Therefore, the plaintiffs, acting for AFM, have chosen to file the claim in this Court.

The Court disagrees with the plaintiffs' interpretation of Section 14. The plain-

tiff's interpretation makes the specific reference to Hennepin County pointless. Section 14 states "AFM shall have the right, *if it so elects,* to institute and prosecute proceedings in any court of competent jurisdiction in Hennepin County, Minnesota." (emphasis added). The highlighted clause allows AFM to choose whether or not to institute and prosecute proceedings. The location of those proceedings is a separate issue and is clearly spelled out in Section 14. Therefore, even assuming that the plaintiffs could state a claim for a shareholder derivative suit, the Court would have to dismiss the claim as the participation agreement requires it to be brought in Hennepin County. There is no indication that the forum clause itself is unenforceable. Minnesota law controls the interpretation of the participation agreements and Hennepin County is the location of AFM's principle place of business. Also, the forum selection clause was not one of adhesion and there is no indication the contract is otherwise unenforceable.

### IV. Conclusion

The plaintiffs fail to state claims upon which relief can be granted. Accordingly, the Court dismisses the plaintiffs' claims.[6]

IT IS SO ORDERED.

---

6. Having dismissed the derivative and breach of contract claims, the Court also dismisses the plaintiffs' related claims for declaratory relief.